1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 | SARVPREET GREWAL,

12 |             Plaintiff,

13 |     v.

14 | PARK MY FLEET LLC, et al.,

15 |             Defendants.

16

No.  2:24-cv-00834-DAC-AC

ORDER GRANTING PLAINTIFF'S MOTION
TO REMAND AND REMANDING THIS
ACTION TO THE SAN JOAQUIN COUNTY
SUPERIOR COURT

(Doc. No. 11)

17       This matter is before the court on plaintiff's motion to remand this action to the San

18 Joaquin County Superior Court.  (Doc. No. 11.)  The pending motion was taken under submission

19 to be decided on the papers pursuant to Local Rule 230(g).  (Doc. No. 13.)  For the reasons

20 explained below, the court will grant plaintiff's motion to remand.

21                               **BACKGROUND**

22       On December 29, 2024, plaintiff Sarvpreet Grewal filed this putative class action against

23 his employer, defendant Park My Fleet, LLC, in the San Joaquin County Superior Court.  (Doc.

24 No. 1-1 at 5.)  In his complaint, plaintiff brings seven separate claims alleging that defendant

25 violated California labor laws by failing to pay minimum and straight time wages, pay overtime

26 rages, pay meal and rest period premiums, timely pay final wages, provide compliant wage

27 statements, and provide requested employment records, as well as a claim under the California

28 Business and Professions Code §§ 17200, *et seq.*  (*Id.*)

1    On January 2 and 3, 2024, plaintiff attempted to serve defendant through substituted

2    service pursuant to California Code of Civil Procedure § 415.20.  (*Id.* at 37–39.)  On February 15,

3    2024, defendant executed a notice of acknowledgment and receipt of the substituted service.  (*Id.*

4    at 41.)

5    On March 18, 2024, defendant removed this action to this federal court pursuant to 28

6    U.S.C. §§ 1332, 1441, and 1446, on the grounds that diversity jurisdiction exists because plaintiff

7    and defendant are citizens of different states and the amount in controversy exceeds $75,000.

8    (Doc. No. 1.)  In support of that notice of removal, defendant also filed a declaration of its human

9    resources senior manager.  (Doc. No. 1-2.)

10   On April 17, 2024, plaintiff filed the pending motion to remand this action to the San

11   Joaquin County Superior Court, arguing that the amount in controversy requirement under 28

12   U.S.C. § 1332 is not met here and that the removal was not timely.  (Doc. No. 11.)  On May 2,

13   2024, defendant filed its opposition to plaintiff's motion to remand, with a supplementary

14   declaration of its human resources senior manager.  (Doc. No. 12, 12-1.)  In this opposition,

15   defendant provided its calculation of the amount in controversy.  (Doc. No. 12 at 8–17.)  On May

16   13, 2024, plaintiff filed a reply in support of his pending motion to remand.  (Doc. No. 14.)

17   **LEGAL STANDARD**

18   A suit filed in state court may be removed to federal court if the federal court would have

19   had original jurisdiction over the suit.  28 U.S.C. § 1441(a).  Removal is proper when a case

20   originally filed in state court presents a federal question or where there is diversity of citizenship

21   among the parties and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. §§ 1331,

22   1332(a).

23   "If at any time before final judgment it appears that the district court lacks subject matter

24   jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  "The removal statute is strictly

25   construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to

26   the party invoking the statute."  *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir.

27   2004) (citation omitted); *see also Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d

28   1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that removal is

2

proper.").  If there is any doubt as to the right of removal, a federal court must reject jurisdiction and remand the case to state court.  *Matheson v. Progressive Specialty Ins. Co*., 319 F.3d 1089, 1090 (9th Cir. 2003); *see also Valdez v. Allstate Ins. Co*., 372 F.3d 1115, 1118 (9th Cir. 2004).

A party's notice of removal must contain "a short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure," and a "statement 'short and plain' need not contain evidentiary submissions."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83–84 (2014); *see also Ramirez-Duenas v. VF Outdoor, LLC*, No. 1:17-cv-0161-AWI-SAB, 2017 WL 1437595, at *2 (E.D. Cal. Apr. 24, 2017) ("The notice of removal may rely on the allegations of the complaint and need not be accompanied by any extrinsic evidence.").

When a "defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  *Dart Cherokee*, 574 U.S. at 88.  The party asserting diversity jurisdiction bears the burden of proving by a preponderance of the evidence—that is, that it is "more likely than not"—that the amount in controversy exceeds $75,000.  *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  "A defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."  *Adkins v. J.B. Hunt Transp., Inc.*, 293 F. Supp. 3d 1140, 1144 (E.D. Cal. 2018) (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)).  "When the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones."  *Lindsey v. WC Logistics, Inc.*, 586 F. Supp. 3d 983, 992 (N.D. Cal. 2022) (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)).

The amount in controversy "is simply an estimate of the total amount in dispute, not a prospective assessment of [the] defendant's liability."  *Lewis v. Verizon Comm. Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  "[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."  *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018).

1  "In calculating the amount in controversy, a court must assume that the allegations in the

2  complaint are true and that a jury will return a verdict for plaintiffs on all claims alleged." *Page*

3  *v. Luxottica Retail N. Am.*, No. 2:13-cv-01333-MCE-KJN, 2015 WL 966201, at *2 (E.D. Cal.

4  Mar. 4, 2015); *accord Campbell v. Vitran Express, Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012).[1]

5  Moreover, "a court must include [actual and] future attorneys' fees recoverable by statute or

6  contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift*

7  *Trans. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018).

8  **ANALYSIS**

9        In the pending motion to remand, plaintiff argues that defendant improperly removed this

10  action because defendant failed to meet its burden to establish federal subject matter jurisdiction

11  based on diversity.  (Doc. No. 11 at 8.)  Plaintiff does not dispute that complete diversity of

12  citizenship exists, but instead contends that defendant has failed to show that the amount in

13  controversy exceeds $75,000.  (*Id.*)  Plaintiff has not asserted in his complaint or moving papers

14  that he seeks less than $75,000 in this action.  Rather, he argues that this action should be

15  remanded because defendant "fails to provide competent evidence that the amount in controversy

16  exceeds $75,000."  (*Id.*)  In particular, plaintiff contends that the initial declaration provided by

17  defendant in support of its findings contains "nothing . . . that even mentions any amounts or

18  numbers, or anything whatsoever to support Defendant's assumption that the amount in

19  controversy requirement is met."  (Doc. No. 11 at 9.)  In his reply, plaintiff emphasizes that

20  defendant's calculations are stated for the first time in its opposition brief, and those calculations

21  rely on "speculative, unsupported violation rates."  (Doc. No. 14 at 6.)

22        As a preliminary matter, the court notes that neither party has submitted evidence in

23  support of their assertions regarding the amount in controversy in this case.  However, because

24  the court finds that defendant has not met its burden for the reasons explained below, "it is not

25  necessary for plaintiff to come forward with evidence in support of his estimate of the amount in

26  controversy.

27

28  [1] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

4

1   Where, as here, the evidence is in equipoise, i.e., no evidence on either side, 'the scales tip against

2   federal-court jurisdiction.'"  *White*, 2023 WL 5505781, at *4 (citation omitted).

3        In support of its opposition to the pending motion to remand, defendant has attached a

4   short declaration from its human resources senior manager, Samantha Miles, who declares that

5   plaintiff was paid on a bi-weekly basis and worked "approximately eight (8) pay periods between

6   March 15, 2023 through July 12, 2023."  (Doc. No. 12-1 at ¶ 6.)  Ms. Miles further stated that

7   plaintiff's "hourly rate of compensation was $19.00" and that "on average, [p]laintiff worked

8   approximately 5 days per week," though Ms. Miles did not clarify the bases for these assertions.

9   (*Id.*)  Ms. Miles did not provide information on how many hours per day plaintiff worked or how

10   many overtime hours plaintiff worked.  Based on the Miles declaration and assumptions that

11   defendant has drawn from the allegations in plaintiff's complaint, defendant calculates the

12   amount in controversy to be $77,917.50 on the low end and $96,870 on the high end.  (Doc. No.

13   12 at 8–17.)  This total is comprised of the subtotals for plaintiff's overtime claim ($2,280 low or

14   $18,240 high), meal periods claim ($6,080), rest periods claim ($1,520), waiting times claim

15   ($4,987.50 low or $7,980 high), wage statements claim ($750), business expenses claim ($800),

16   employment records claim ($1,500), and attorneys' fees ($60,000).

17        The question for the court is whether defendant's estimates in this regard are based upon

18   reasonable assumptions and whether defendant has borne its burden of proving by a

19   preponderance of the evidence that the amount in controversy exceeds $75,000.

20   **A.**    **Overtime Claim**

21        With regard to his overtime claim, plaintiff alleges the following in his complaint:  "At all

22   times relevant hereto, [p]laintiff and the[c]lass, or some of them, have at times worked more than

23   eight hours in a work day and/or more than forty (40) hours in a workweek, as employees of

24   defendant."  (Doc. No. 1-1 at 19, ¶ 45.)  He further alleges that "[d]efendants failed to pay

25   [p]laintiff and the [c]lass, or some of them, overtime compensation for the hours they have

26   worked in excess of the maximum hours permissible by law."  (*Id.* at ¶ 46.)

27        Based solely on these allegations and without any further explanation or analysis in either

28   its notice of removal or in its opposition to plaintiff's motion to remand, defendant assumes that

plaintiff is alleging that he worked overtime every single workday.  (Doc. No. 12 at 12.)  Further, defendant "calculated [a] daily violation rate across a "low" (0.5 hours a day) and "high" (four hours a day) range of uncompensated overtime."  (*Id.*)  Defendant therefore assumes that each workweek, plaintiff worked 2.5 hours of overtime on the low end or 20 hours of overtime on the high end.  (*Id.*)  Based on these assumptions, defendant then calculates that the damages on plaintiff's overtime claim by multiplying the assumed number of overtime hours per workweek (2.5 or 20 hours) by $28.50 (one and one-half plaintiff's base hourly rate of $19.00), and then multiplying that result by the number of workweeks that plaintiff worked (16).  (*Id.*)  This calculation yields a low value of $1,140 and a high value of $9,120.  Defendant's calculation concludes by doubling these values to account for liquidated damages.  (*Id.*)  It is not clear why defendant believe that this doubling is warranted or should be done—plaintiff did not plead liquidated damages in seeking relief as to his overtime claim.[2]  (Doc. No. 1-1 at 18–19.)

The court finds that defendant's asserted total amount in controversy for plaintiff's overtime claim, $2,280 (low) and $18,240 (high), are plainly unsupported and not drawn from the allegations of plaintiff's complaint.  Defendant bears the burden to satisfy the amount-in-controversy requirement and the court will not correct defendant's calculation for liquidated damages to arrive at a corrected subtotal.  More importantly, defendant fails to substantiate its assumed violation rates.  Plaintiff's complaint stated merely that "at times" plaintiff worked more than 8 hours per day, not that he worked overtime hours every single workday.  (Doc. No. 1-1 at 19, ¶ 45.)  Thus, the court finds that defendant did not rely on reasonable assumptions in calculating the amount in controversy with respect to plaintiff's overtime claim.  As a result, "the court does not consider defendant's estimate of unpaid overtime damages in its calculation of the amount in controversy."  *Peppers v. Pac. Off. Automation, Inc.*, No. 23-cv-7181-JGB-KK, 2023 WL 8653142, at *4 (C.D. Cal. Dec. 14, 2023); *see also White*, 2023 WL 5505871, at *4 ("In attempting to satisfy [its] burden, what defendant cannot do is simply pull violation rates out of

---

[2]  Though plaintiff does plead for liquidated damages as to his claim that defendant failed to pay minimum wages and pray for relief under California Labor Code § 1194.2, he does not pray for such relief with regard to the failure to pay overtime.  (Doc. No. 1-1 at 17–18.)  Defendant does not calculate any damages related to plaintiff's minimum wage claim.  (Doc. No. 12 at 17.)

6

thin air and conclusively state that they are 'reasonable inference[s]' about the most important variables involved in the necessary calculation.") (citation omitted).

**B.    Meal Periods**

With regard to his meal periods claim, plaintiff alleges in his complaint that

> Defendants, at times, failed to provide [p]laintiff and the [c]lass, or some of them, with both meal periods as required by California law. By their failure to permit and authorize [p]laintiff and the [c]lass, or some of them, to take all meal periods as alleged above (or due to the fact that [d]efendants made it impossible or impracticable to take these uninterrupted meal periods), [d]efendants willfully violated [California Labor Code].

(Doc. No. 1-1 at 29, ¶ 53.)  Plaintiff contends that he and the class are entitled to be paid one hour of additional wages for each workday in which they were not provided with all required meal periods.  (*Id.* at ¶ 54.)  Plaintiff does not allege how many meal periods he was not given nor to what degree he was not compensated for those missed meal periods.

As with plaintiff's overtime claim, defendant assumes that plaintiff missed a meal period and was not compensated for that meal period every single workday.  (Doc. No. 12 at 13.)  Without any further explanation or evidence, defendant also assumes that plaintiff missed a second meal period every single workday.  (Doc. No. 12 at 13.)  Based on these unsubstantiated assumptions, defendant calculates the amount in controversy for plaintiff's meal periods claim as the number of workweeks plaintiff worked (16) multiplied by the number of missed meal periods per week (5 first meal periods + 5 second meal periods), then multiplied by his hourly wage ($19.00).  (*Id.*)  This calculation yields an amount in controversy of $3,040.  Defendant then also assumes that plaintiff worked through those meal periods and was not compensated for that work, so doubles the amount of damages to $6,080 associated with plaintiff's meal periods claim.  (*Id.*)

Here too, defendant's assumptions on the violation rate are unsubstantiated and not connected to the allegations of plaintiff's complaint.  It is first worth noting that plaintiff does not claim in his meal periods claim that he was denied payment for the work he performed when denied a meal period nor does he pray for such relief of unpaid wages.  (Doc. No. 1-1 at 29.)  As a result, there is no basis in the complaint for defendant to include in the damages associated with plaintiff's meal periods claim any "payment for the actual time worked."  (Doc. No. 12 at 13.)

7

1    Moreover, defendant assumes that plaintiff worked overtime every single day (thereby entitled

2    him to a second meal period) and was denied both meal periods every single day.  (*Id.*)  This

3    assumption is baseless since plaintiff only alleges in his complaint that "*at times*" he was denied a

4    meal period and does not claim to have been denied multiple meal periods in a single day, let

5    alone every workday.  (Doc. No. 1-1 at 29, ¶ 53.)

6             For these reasons, the court finds that defendant did not rely on reasonable assumptions in

7    asserting the amount in controversy as to plaintiff's meal periods claim.  Accordingly, the court

8    will also not consider defendant's estimated amount in controversy as to this claim.

9             Because the estimated amounts for the remaining claims do not exceed the $75,000

10   jurisdictional threshold,[3] even if the court were to accept all of defendant's remaining estimates,

11   defendant would still fail to satisfy its burden. Consequently, the court need not, and does not,

12   address whether defendant made reasonable assumptions to arrive at its estimates with regard to

13   plaintiff's other claims.  The court readily concludes that defendant has not met its burden of

14   establishing the requisite amount in controversy by a preponderance of the evidence.

15   Accordingly, plaintiff's motion to remand this case to the San Joaquin County Superior Court will

16   be granted.[4]

17   /////

18   /////

19   /////

20   /////

21   /////

22   /////

23

---

24   [3]  The remaining categories are for plaintiff's rest periods claim ($1,520), waiting time penalties
     claim ($4,987.50 low or $7,980 high), wage statements claim ($750), business expenses claim
25   ($800), employment records claim ($1,500), and attorneys' fees ($60,000), yielding a total of
     $69,557.50 as a low or $72,550 as a high.  (Doc. No. 12 at 17.)
26

27   [4]  Because remand is mandated on other grounds, the court does not address the issue of whether
     service of process on January 3, 2024, was proper and whether the resulting notice of removal on
28   March 18, 2024 was timely.  (Doc. No. 11 at 13–15.)

1

**CONCLUSION**

2        For the reasons explained above:

3        1.     Plaintiff's motion to remand (Doc. No. 11) is granted;

4        2.     This action is remanded to the San Joaquin Superior Court due to this court's lack

5              of subject matter jurisdiction; and

6        3.     The Clerk of the Court is directed to close the case.

7        IT IS SO ORDERED.

8   Dated:  **September 17, 2024**

9                                 DALE A. DROZD

10                              UNITED STATES DISTRICT JUDGE